UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JOTHI RATHNAM PADMANABHAN,

                     Plaintiff,

– against –

NEW YORK INSTITUTE OF TECHNOLOGY CAMPUS, NEW YORK *a/k/a* NYIT, THE BOARD OF TRUSTEES; VARUN CHOPRA, *in official and individual capacities of NYIT*; ZENNABELLE SEWELL, *in official and individual capacities of NYIT*; MICHAEL SCHNEIDER, *in official and individual capacities of NYIT*; GABRIELLE ST. LEGER, *in official and individual capacities of NYIT*; CHERYL MONTIOCCIOLO, *in official and individual capacities of NYIT*; ANTHONY REPALONE, *in official and individual capacities of NYIT*; and WILLIAM JOSEPH, *in official and individual capacities of NYIT*,

                     Defendants.

**OPINION AND ORDER**
18 Civ. 5284 (ER)

Ramos, D.J.:

*Pro se* plaintiff Jothi Rathnam Padmanabhan ("Plaintiff" or "Padmanabhan") brings claims of violation under Title VI of the Civil Rights Act, 42 U.S.C. § 2000d, *et seq.* ("Title VI"), New York State Civil Rights Law § 40-c ("NYRCL"), and the New York Institute of Technology Campus, New York ("NYIT") "Statement on Non-Discrimination," against NYIT and various individual defendants ("Individual Defendants") in their individual and official capacities: Varun Chopra ("Chopra"), a former NYIT student who was Student President of the NYIT Honor Society; Zennabelle Sewell ("Dean Sewell"), NYIT Associate Dean of Campus Life; Michael Schneider ("Director Schneider"), Director of the NYIT Counseling and Wellness Services; Gabrielle St. Leger ("St. Leger"), an NYIT Title IX Deputy Coordinator; Cheryl

Montiocciolo ("Montiocciolo"), an NYIT Title IX Coordinator; Anthony Repalone ("Repalone"), an NYIT campus security officer; and William Joseph ("Joseph"), an NYIT campus security officer (collectively with NYIT ("Defendants")).

Padmanabhan asserts that Defendants discriminated against him in a series of disparate incidents, including "group-spitting" during a sport event, surveillance, and murder threats, because he is South Asian. He further alleges that Defendants retaliated against him for filing racial discrimination complaints by making false medical claims about his psychological condition. Defendants filed a motion to dismiss contending that Padmanabhan has failed to plead sufficient facts to support his discrimination claims. For the reasons set forth below, the motion to dismiss is GRANTED.

## I. BACKGROUND

Padmanabhan's allegations are laid out in a meandering, and at times fanciful, 101-page complaint that asserts racial discrimination claims against him while he was a student at NYIT.[1] Doc. 28. The primary players in this action include several NYIT officials, students, and secret "agents" who Padmanabhan asserts surveilled, planned hate crimes, and conspired against him because of his race and national origin. When NYIT officials referred Padmanabhan to mental health counseling, he called that retaliation. Nevertheless, as Padmanabhan has asserted that he was discriminated against, the Court analyzes his claims thoroughly.

NYIT is a private institution of higher education with multiple campuses, including in Old Westbury and Manhattan in New York. Doc. 33, 2. Defendants do not dispute that NYIT

---

[1] Some of these allegations appear in filings other than the amended complaint; specifically, this opinion relies on allegations in the original complaint and Padmanabhan's opposition to the motion to dismiss. "[I]n cases where a *pro se* plaintiff is faced with a motion to dismiss, it is appropriate for the court to consider materials outside of the complaint to the extent they are consistent with the allegations in the complaint." *Donhauser v. Goord*, 314 F. Supp. 2d 119, 121 (N.D.N.Y. 2004) (quotation marks omitted) (collecting district court cases); *see also Gill v. Mooney*, 824 F.2d 192, 195 (2d Cir. 1987) (considering allegations in *pro se* plaintiff's opposition to motion to dismiss).

receives federal financial assistance as Padmanabhan alleges. Doc. 28 ¶ 1. NYIT has a non-discrimination statement that states: "NYIT does not discriminate in admissions or access to, or operations of, its programs and activities on the basis of race, color and other legal protected status." *Id.* ¶ 178. Padmanabhan is a graduate of NYIT and attended both the Manhattan and Old Westbury campuses. *Id.* ¶ 10. He is a South Asian man of "Tamilnadu" descent; Tamil Nadu is a state in India. *Id.* ¶ 179.

### A. Surveillance and Monitoring at NYIT

Padmanabhan asserts that NYIT agents monitored him on NYIT's campus and in places like train stations, stores, and sporting arenas. *Id*. ¶ 30. The NYIT agents allegedly engaged in a discriminatory activity called "cyber-tracking," where they targeted him with private cyber-surveillance; physically monitored his activities; and engaged in an activity called "eye-signaling," where two or more NYIT agents would send and receive messages among themselves through their eye motions in Padmanabhan's presence with the intent of assaulting or threatening him. Doc. 28, 20–25. Another form of racially discriminatory behavior allegedly occurred during class lectures when the perpetrator would sit casually, place a leg over the knee, and rotate their ankle and foot in a circle, with the intent to humiliate, intimidate, insult, and exclude Padmanabhan. *Id.* ¶ 26.

Furthermore, Padmanabhan asserts that he attended two NYIT career fairs—on September 15, 2016 at the Manhattan campus and on March 7, 2017 at the Old Westbury campus. *Id.* ¶ 36–37. During these fairs, NYIT agents allegedly monitored him in disguise and engaged in eye-signaling with recruiters to segregate Padmanabhan and prevent him from participating in the fair. *Id.* ¶ 38–40. He does not specify who engaged in this conduct. *Id.* ¶ 28. Padmanabhan allegedly reported the cyber-tracking and eye-signaling to Dean Sewell and

3

Director Schneider, but they failed to investigate or respond to his report. *Id.* ¶ 33. While the opposition to the motion is not clear, Padmanabhan also claims that campus security guards rang a telephone alarm every time he entered a campus building and informed other NYIT agents of his arrival to encourage a hate contest against Padmanabhan and escort, segregate, and discriminate against him. Doc. 42, 9.

### B. Incidents with NYIT Students

Padmanabhan also alleges incidents with NYIT students, some of which he characterized as hate crimes. *Id.* ¶ 34–35. In September 2015, a NYIT student, Gheewala Jigar Rajesh, bumped into him and forcefully hit his leg, an incident which Padmanabhan believes was intentionally planned by the other student because Padmanabhan is South Asian and from South India. *Id.* ¶ 34. He alleges that on August 4, 2016, another student, Patel Dhimant Harikrushnabhai, performed a similar act. *Id.* ¶ 35. Similarly, on March 3, 2016, while Padmanabhan was at the baseball stadium on the Old Westbury campus, a group of approximately ten baseball players simultaneously began spitting on the ground close to him and continued doing so for nearly ten to fifteen minutes. *Id.* ¶ 48. Padmanabhan produced a screenshot of a text conversation between him and NYIT sport instructor, James Massari, who allegedly witnessed the event and mentioned it in a text message: "I will never forget it as long as I live:) James." Doc. 28, Ex. G. However, the text conversation does not specifically allude to any particular incident. Additionally, on January 6, 2017, Padmanabhan received what he characterized as a murderous threat from an NYIT student, which said in part: "If you let my daughter go now, that'll be the end of it….But if you don't, I will look for you, I will find you, and I will kill you." *Id.* ¶ 52 and Ex. H. Dean Sewell advised him the threat was *verbatim* dialogue from a movie. *Id.* ¶ 54.

On May 9, 2016, Padmanabhan was designated Social Events Chair of the NYIT chapter of the National Society of Leadership and Success ("NSLS"), a leadership honor society. *Id.* ¶ 65. His responsibilities included planning and implementing social events, such as reserving rooms and ordering food. *Id.* ¶ 90. He alleges various incidents regarding his participation on the NSLS board, such as eye-signaling among board members in his presence with the intent of performing first degree assaults and threats against Padmanabhan. *Id.* ¶ 81.

Padmanabhan also reports disagreements with Chopra, then President of NSLS, who on October 12, 2016, chastised Padmanabhan for not facilitating an NSLS event. *Id.* ¶ 108. Padmanabhan said he did not receive a reminder before the event and Chopra replied that he was an adult and had to be aware of his own responsibilities. *Id.* ¶ 108 and Ex. B. He reported the incident to Dean Sewell pursuant to NYIT's non-discrimination statement. *Id.* ¶¶ 109, 111 and Ex. C. While the SAC is not clear on this point, Padmanabhan alleges that Dean Sewell scheduled a meeting with him on October 18, 2016 concerning his dispute with Chopra. *Id.* ¶ 116–119. She declined to take disciplinary action against Chopra and instead recommended Padmanabhan schedule an appointment with Director Schneider for the morning of October 26, 2016 at NYIT Counseling and Wellness Services because he had "mental voices in [him]." *Id.* ¶¶ 119–20, 123.

### C. Facebook Post and Meeting with Director Schneider

On October 23, 2016, before attending the meeting with Director Schneider, Padmanabhan claims he posted a message on a public Facebook group, "NY Court of Public Opinion and Warning," regarding the racial discrimination he believed to be experiencing at NYIT. *Id.* ¶ 124. In the post, Padmanabhan wrote that for two years he had been experiencing and noticing strange behavior, such as "unauthorized persons" monitoring all of his activities,

5

specifically in places where he volunteered, in sports clubs, and at his institutions. *Id.* at Ex. E. He also noted that when he reported these incidents to his college, they did not respond and are a part of it. *Id.* The post does not mention NYIT or any of its personnel by name. Padmanabhan further alleges that NYIT agents saw the post and planned to retaliate against him during his appointment with Director Schneider. *Id.* ¶¶ 5, 124. On or about October 26, 2016, Padmanabhan arrived for his scheduled appointment and alleges that instead Director Schneider accompanied him to the Comprehensive Psychiatric Emergency Program ("CPEP") at Mount Sinai St. Luke's Hospital ("St. Luke's"). *Id.* ¶ 125. Director Schneider allegedly made false statements to the St. Luke's staff for the purpose of having Padmanabhan admitted to CPEP, or otherwise conspired to have Padmanabhan admitted to CPEP against his will. *Id.* ¶¶ 125, 132–39. The St. Luke's staff questioned Padmanabhan for five hours. *Id.* ¶ 132. On November 30, 2016, they sent him a letter acknowledging his October 27, 2016 date of service in their emergency department in response to his concerns about his medical records. *Id.* at Ex. F. The record does not show whether Padmanabhan was admitted to St. Luke's.

### D. Racial Discrimination Complaints

Lastly, Padmanabhan alleges that between 2016 and 2017 he made complaints about the racial discrimination he was experiencing to various NYIT and federal officials: Dean Zennabelle, orally on September 15, 2016 and in writing on October 18, 2016; St. Leger, an NYIT Title IX Coordinator, orally on October 18, 2016; Director Schneider, orally on September 13, 2016 and in writing on October 21, 2016; Office for Civil Rights, U.S. Department of Higher Education, in writing on March 27, 2017; and Monticciolo, an NYIT Title IX Coordinator, in writing on June 6, 2017. *Id.* ¶ 2. Padmanabhan further asserts that all of the complaints were handled via "psychological warfare" to avoid the issue and not eliminate the discrimination. *Id.*

6

¶ 173. He seeks damages and injunctive relief for Defendants' failure to protect him from racial conduct at NYIT. *Id.* at Prayer for Relief ¶¶ 6–7.

### E. Procedural History

On June 12, 2018, Padmanabhan filed a complaint in this District alleging that Defendants violated several federal and state civil rights laws and NYIT's non-discrimination policy. Doc. 1. On August 9, 2018, he filed an amended complaint and two months later, on October 9, 2018, the Court allowed him to file a second amended complaint ("SAC"). Docs. 19, 28. On November 13, 2018, Defendants moved to dismiss the SAC for failure to state a claim. Doc. 31. On two occasions—November 19, 2018 and January 7, 2019—this Court denied Padmanabhan's request to file a third amended complaint. Docs. 38, 46. The Court addresses Defendants' defenses below.

## II. LEGAL STANDARD

When ruling on a motion to dismiss pursuant to Fed. R. Civ. Pro. 12(b)(6), district courts are required to accept as true all factual allegations in the complaint and to draw all reasonable inferences in plaintiff's favor. *Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013). However, this requirement does not apply to legal conclusions, bare assertions, or conclusory allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 681, 686 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A plaintiff is required to support his claims with sufficient factual allegations to show "more than a sheer possibility that a defendant has acted unlawfully." *Id*. If the plaintiff has not "nudged [his] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *In re Express Scripts Holding Co. Sees, Litig.*, No. 16 Civ. 3338 (ER), 2018 WL 2324065, *6 (S.D.N.Y. May 22, 2018) (quoting *Twombly*, 550 U.S. at 570).

Moreover, while a *pro se* plaintiff is permitted certain leeway, a court will still require that he plead facts sufficient to "state a claim to relief that is plausible on its face." *Teichmann v. New York,* 769 F. 3d 821, 825 (2d Cir. 2014) (citing *Iqbal*, 556 U.S. at 678). Although Title VI plaintiffs need not specifically recite the prima facie elements of Title VI in their pleadings, to render their claims facially plausible under *Iqbal*, at a minimum, they must have pleaded sufficient facts to permit the reviewing court to reasonably infer that each of these required elements has been met. *See Forde v. Empire State College*, No. 10-cv-9446 (CM) (THK), 2011 WL 4376499, at *2 (S.D.N.Y. Sept. 19, 2011); *see also Assoko v. City of New York*, 539 F. Supp. 2d 728, 741 (S.D.N.Y. 2008) (collecting cases holding complaints alleging Title VI discrimination cannot survive motion to dismiss when it has not satisfied minimal burden at pleading stage).

## III. DISCUSSION

### A. Federal Title VI Claim

Padmanabhan's primary claim is that NYIT violated his rights under Title VI of the Civil Rights Act. Title VI provides that "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d. To establish a claim under Title VI, a plaintiff must show "(1) that the defendant discriminated against him on the basis of race; (2) that [the] discrimination was intentional; and (3) that discrimination was a substantial and motivating factor for the defendant's actions." *Manolov v. Borough of Manhattan Community College*, 952 F. Supp.2d 522, 531 (S.D.N.Y. 2013) (citing *Tolbert v. Queens Coll.*, 242 F.3d 58, 69 (2d Cir. 2001)). Title VI claims cannot be brought against individuals and so to the extent that Padmanabhan asserts

8

Title VI claims against the Individual Defendants, those claims are dismissed. *Verdi v. City of New York*, 306 F. Supp. 3d 532, 542 (S.D.N.Y. 2018).

Padmanabhan has failed to raise any inferences of racially discriminatory conduct against NYIT. He does not allege that any NYIT representative made racially discriminatory comments against him, nor did he causally connect any such comments to conduct arising to the level of discrimination. *Henry v. NYC Health & Hosp. Corp.*, 18 F. Supp. 3d 396, 409 (S.D.N.Y. 2014); *see also Verdi*, 306 F. Supp. 3d at 542 (establishing that plaintiff may raise causal connection indirectly through evidence of temporal proximity or disparate treatment of similarly situated individuals, or directly through evidence of retaliatory animus directed at plaintiff). The SAC contains no references that NYIT made disparaging or degrading remarks against South Asian or Indian people, nor allegations that other students received more favorable treatment than Padmanabhan. Doc. 33, 10; *see also Manolov*, 952 F. Supp.2d at 531 (dismissing Title VI claims where plaintiff did not allege facts to infer that race or nationality intentionally or substantially motivated challenged conduct).

The closest incident to such an allegation occurred when Dean Sewell refused to take disciplinary action against Chopra after Padmanabhan reported the NSLS event disagreement. Doc. 28 ¶ 123. However, Chopra is also South Asian and from India, making him a member of the protected group which Padmanabhan alleges was the target of the discrimination. Doc. 33, 2. Furthermore, the incident did not involve a racial undertone; it was a dispute about Padmanabhan's alleged failure to carry out his duties as Social Events Chair of NSLS. *Henry*, 18 F. Supp. 3d at 409.

Similarly, Padmanabhan does not make specific allegations indicating a deprivation of rights or exclusion from participation in an educational program. He merely states that he lost

9

"stability in concentration on education." Doc. 28 ¶ 157. Despite any leniency afforded *pro se* plaintiffs, they must ultimately meet the "plausibility requirement" elucidated in *Twombly* and *Iqbal*, or face dismissal of their complaint. *See, e.g., Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011). Even construed liberally, Padmanabhan's SAC utterly fails to state a Title VI race or national origin discrimination claim against any of the Defendants. *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (holding courts must interpret *pro se* plaintiff's submissions liberally and construe strongest arguments they suggest).

As Padmanabhan does not raise plausible inferences of racial discrimination under Title VI, his retaliation claim also fails. A Title VI retaliation claim must plausibly allege (1) plaintiff's participation in a protected activity known to the defendants; (2) an adverse action by the defendants against the plaintiff; and (3) a causal connection between the plaintiff's protected activity and the defendants' adverse action. *Verdi*, 306 F. Supp. 3d at 542. Padmanabhan alleges one retaliatory act: that Schneider accompanied him to CPEP, and allegedly submitted false information about Padmanabhan's mental state to the hospital staff, in retaliation for Padmanabhan posting about the alleged discrimination he experienced on the Facebook group. Doc. 28 ¶¶ 6, 124, 132–139.

However, Padmanabhan wrote the post on Facebook, a third-party website, and does not mention NYIT or refer to any NYIT personnel, and so the allegations do not support the inference that Padmanabhan's experience at St. Luke's is in any way connected to the Facebook group. Doc. 28, Ex. E; *See Diaz v. City University of New York*, No. 13-cv-2038 (PAC) (MHD), 2015 WL 5577905, at *12 (S.D.N.Y. Sept. 22, 2015) (finding *pro se* plaintiff's complaint failed to adequately plead title VII claim where plaintiff sent letter of complaint to third party and did not explicitly plead facts that showed official at plaintiff's university knew about it); *see also*

*Verdi*, 306 F. Supp. 3d at 544 (finding *pro se* plaintiff failed to support any inference of causal connection between complaint and alleged retaliatory action where "his assertions read more like a conspiracy theory than a plausible allegation"). Accordingly, the Court dismisses the Title VI claim in its entirety.

### B. State Civil Rights Claim

Padmanabhan alleges that Defendants violated NYCRL § 40-c, which provides in pertinent part that: "No person shall, because of race, creed, color, national origin, sex, marital status, sexual orientation, gender identity or expression, or disability…be subjected to any discrimination in his or her civil rights, or to any harassment…." N.Y. Civ. Rights Law § 40-c(2). Pursuant to 28 U.S.C. § 1367(c)(3), the Court may decline to exercise pendent jurisdiction over this claim as it has dismissed the federal claim which it had original jurisdiction on. *See United Mine Workers of Am. v. Gibbs,* 383 U.S. 715, 726 (1966) ("Certainly, if the federal claims are dismissed before trial...the state claims should be dismissed as well."); *see also Sadallah v. City of Utica,* 383 F.3d 34, 39–40 (2d Cir. 2004) (holding when plaintiff no longer has viable federal claim, any remaining state law claims belong in state court). Thus, this Court does not have jurisdiction over Padmanabhan's remaining state law claim.

Even if this Court did have jurisdiction, Padmanabhan has not asserted enough facts to sustain the state law allegations. The NYCLR § 40-c is analyzed together with N.Y. State Human Rights Law § 296(4), which similarly prohibits discrimination based on protected grounds, like race and national origin. N.Y. Exec. Law § 296(4); *see Ganzy v. Allen Christian Sch.*, 995 F. Supp. 340, 350 (E.D.N.Y. 1998) (holding facts sufficient to establish cause of action under NYCLR § 40-c are sufficient to support cause of action under NYSHRL § 296). Likewise, the Second Circuit has held that NYSHRL § 296 claims are evaluated under the same standard as

analogous claims under federal discrimination laws. *See Weinstock v. Columbia Univ.*, 224 F.3d 33, 42 n. 1 (2d Cir. 2000). Therefore, just as the Title VI claim must be dismissed for insufficient pleading, so must the claim under NYCRL. *See Bailey v. New York Law School*, No. 16-cv-4283 (ER), 2017 WL 6611582, at *16 (S.D.N.Y. Dec. 27, 2017) (dismissing NYSHRL § 296(4) discrimination claims, having found Title IX discrimination claims were insufficiently pleaded).

### C. NYIT Statement of Non-Discrimination Claim

Liberally construing the SAC, the Court finds that Padmanabhan's third cause of action is an allegation that NYIT violated its contractual obligation to comply with its non-discrimination policy. Doc. 28 ¶ 33. Padmanabhan asserts that NYIT violated his contractual rights as he is a member of a protected class under NYIT's own racial non-discrimination policies. Doc. 42 ¶ 9. In New York, the relationship between a university and its students is contractual, so when a student is admitted to a school an implied contract is formed, the terms of which are supplied by the bulletins, circulars, and regulations made available to the student. *See Gally v. Columbia Univ.*, 22 F. Supp. 2d 199, 206 (S.D.N.Y. 1998). To state a claim under this theory, a student must identify the "specifically designated and discrete promises" the school failed to meet. *See Ward v. New York University*, No. 99-cv-8733 (RCC), 2000 WL 1448641, at *4 (S.D.N.Y. Sept. 28, 2000).

A student cannot simply state the university violated general policy statements or broad and unspecified procedures and guidelines. *Gally*, 22 F. Supp. 2d at 208 (differentiating between general promises about ethical standards and specific promises which have led to valid breach of contract claims against universities); *see also Blaise–Williams v. Sumitomo Bank, Ltd.*, 592 N.Y.S.2d 41, 42 (1st Dep't 1993) (holding general statement of anti-discrimination policy may

not serve as a basis for a breach of contract claim). The NYIT non-discrimination statement is precisely the type of general policy statement that cannot form the basis of a breach of contract action. Even if it did include a specific, enforceable promise to not discriminate, Padmanabhan has not plead facts that lead to an inference of any NYIT conduct attributable to his race or national origin.

To the extent the Court takes Padmanabhan's complaint as a challenge to a university decision with which he disagrees, that claim is time-barred by N.Y. Civil Practice Laws and Rules ("C.P.L.R.") Article 78. Doc. 33, 22. Under Article 78, Padmanabhan's claims against NYIT or its officers would have been barred by a four-month statute of limitations. *See* N.Y. C.P.L.R. §§ 217(1). Claims from students challenging the subjective professional judgment of trained educators are subject exclusively to Article 78. *See e.g., Gally*, 22 F. Supp. 2d at 205; *Gary v. New York Univ.*, 48 A.D.3d 235, 236 (1st Dep't 2008) (holding in challenging adverse university decision and bringing allegations based on contract and racial discrimination, *pro se* plaintiff should have brought proceeding under Article 78). The incidents which Padmanabhan refers to in the SAC occurred approximately between March 2016 and July 2017, however, he brought his complaint one to two years later in June 2018. *See e.g.*, Doc. 28 ¶¶ 48, 144. Therefore, his purported breach of contract claim is time-barred.

## IV. CONCLUSION

In sum, Defendants' motion to dismiss is GRANTED. Doc. 31. The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this Order should not be taken in good faith, and therefore *in forma pauperis* status is denied for the purpose of an appeal.

Moreover, the Court declines *sua sponte* to grant Padmanabhan leave to amend his complaint for numerous reasons. First, although leave to amend a complaint should be freely

given "when justice so requires," Fed. R. Civ. P. 15(a)(2), "it is within the sound discretion of the district court to grant or deny leave to amend." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007). Here, leave is unwarranted because the problem with Padmanabhan's claims is "substantive" and, thus, "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000). Finally, Padmanabhan has already been given permission to amend his complaint twice, and the Court has previously denied his request to file a third amended complaint. Additionally, Padmanabhan has not given any indication that he is in possession of facts that would cure the problems identified in the instant motion to dismiss. *Reynolds v. City of Mount Vernon*, No. 14-CV-1481 (JMF), 2015 U.S. Dist. LEXIS 43061, 2015 WL 1514894, at *5 (S.D.N.Y. Apr. 1, 2015).

The Clerk of the Court is respectfully directed to terminate the motion, Doc. 31, and close the case.

SO ORDERED.

Dated: September 20, 2019
        New York, New York

                                                      Edgardo Ramos, U.S.D.J.